Alexander (Zander) Blewett, III
HOYT & BLEWETT PLLC
501 Second Avenue North
P.O. Box 2807
Great Falls, MT   59403-2807
Phone: (406) 761-1960
Fax: (406) 761-7186
zblewett@hoytandblewett.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| MARK LEISCHNER, | ) |
| | ) Cause No.:  CV-07-138-BLG-RFC-CSO |
| Plaintiff, | ) |
| | ) Judge: Hon. Carolyn S. Ostby |
| v. | ) |
| | ) **PLAINTIFF'S BRIEF IN OPPOSITION** |
| TAYLOR BEAN & WHITAKER | ) **TO EXPERIAN INFORMATION** |
| MORTGAGE CORPORATION, EXPERIAN | ) **SOLUTION, INC.'S, MOTION FOR A** |
| INFORMATION SOLUTIONS, INC., and | ) **PROTECTIVE ORDER** |
| TRANS UNION LLC, | ) |
| | ) |
| Defendants. | ) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

A.   <u>INTRODUCTION.</u>

Since November 1, 2006, Plaintiff owed absolutely nothing to Taylor Bean & Whitaker

Mortgage Corporation (Taylor Bean), because Taylor Bean's trust indenture had been foreclosed

upon and Taylor Bean purchased the property subject to the trust indenture at a Sheriff's sale on

November 1, 2006.  Montana law specifically provided that Plaintiff was not in any way liable

for any deficiency judgment and that he owed nothing whatsoever to Taylor Bean § 71-1-317,

MCA.  Thereafter, Experian Information Solution, Inc (Experian)  reported to the world that

Plaintiff owed $174,858 on a real estate mortgage and that he was in arrears in an amount

exceeding $34,595.  All of this was absolutely false and severely impacted Plaintiff's life.

Plaintiff immediately disputed Experian's credit report.  The Fair Credit Reporting Act (FCRA)

placed an absolute duty on Experian to perform an investigation into the accuracy of this

disputed information.  Experian refused to do any investigation of any kind and continued to

erroneously report the $174,858 real estate debt and the arrearage of $34,595.  As a result, the

Plaintiff could find no place to live for his family, whether through purchasing a home by regular financing, contract for deed, or even renting and has suffered extensively and needlessly.

Plaintiff has now discovered that Experian, completely contrary to the FCRA, never intended to investigate any of these disputes, but, on the contrary, doesn't even have employees to investigate such disputes. Experian, obviously to save vast amounts of money, simply uses a computer system, with no investigation whatsoever, and then continues to report the false information, assuming that the victims of such false credit information, like Plaintiff, will not go through all the trouble to bring Experian to task. The FCRA provides that when a company, like Experian, willfully violates the Act, which Experian clearly did in this case, the Court will award all of the Plaintiff's damages, plus punitive damages, in addition to Plaintiff's attorneys fees.

Because it has become totally clear Experian never intended to investigate and has no process in place to investigate, this case, indeed, is a serious punitive damage case which, hopefully, will greatly impact the manner in which companies like Experian carry out their duties under the FCRA.

On January 25, 2008, Plaintiff served on Experian 13 interrogatories and 7 requests for production, which discovery requests were tailored specifically for this case. A copy of Experian's responses served on February 22, 2008, are attached as Exhibits "A" and "B". Experian objected to every interrogatory and every request for production, claiming the attorney-client privilege, the work product privilege, and trade secret privilege without filing a privilege log with the Court and without requesting a protective order. In addition, Experian objected to every discovery response, claiming it was unduly burdensome, oppressive, harassing, and unreasonable in scope. Then, Experian stated, without waiving the objection, it would provide some information, but it was impossible to tell if it was providing all or just a portion of the information because of the objections.

Experian now demands a protective order from this Court. Experian is not entitled to any protective order because it has, beyond question, waived the right to obtain a protective order from this Court. In addition, Experian has failed to show "good cause" for a protective order

under Rule 26, F.R.Civ.P., for its training guides, dispute procedures, and other documentation because the documentation is in no way a trade secret. Finally, the protective order being sought by Experian is meant to totally disrupt the manner in which counsel and the Court ordinarily try such a case and is further meant to hide Experian's wrongdoing over the years, which wrongdoing has caused extensive damage to Plaintiff.

**B.     ARGUMENT.**

       1.     **Experian Has Waived Any Right to Obtain a Protective Oder**.

On July 28, 2003, this Court, the Honorable Richard Anderson presiding, set forth the unequivocal law which would be applied by this Court in circumstances such as these. In *Simonson v. Allstate*, Cause No. DV-01-64-BU-DWM, Judge Anderson issued an order, a copy of which is attached as Exhibit "C". Judge Anderson's order, as a U.S. Magistrate, was affirmed by Chief Judge Donald W. Molloy on September 15, 2003. A copy of Judge Molloy's order is attached Exhibit "D". The conduct of Allstate in the *Simonson* case is nearly identical to the conduct of Experian in this case. In *Simonson* Judge Anderson stated on page 3 of his Order:

> When faced with written discovery requests, a party may either "object properly or move for a protective order." 8 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2035 (1994). As noted by the 1970 Advisory Committee Notes to Rule 33(a), Fed.R.Civ.P.:
>
>> [T]he responding party who believes that some parts or all of the interrogatories are objectionable may choose to seek a protective order under new Rule 26(c) <u>or</u> may serve objections under this rule. Unless he applies for a protective order, he is required to serve answers or objections in response to the interrogatories, subject to the sanctions provided in Rule 27(d).
>
> (Emphasis added.) [by Judge Anderson]
>
> Thus, the rules governing discovery offered Allstate two alternatives. It could serve objections to plaintiffs' requests for production or it could move for an order protecting it from responding to the requests. <u>Either course should have been taken within the time set for responding to discovery</u>. (Emphasis added).
>
> Allstate chose to object to the discovery rather than apply for a protective order. In so doing, Allstate waived its right to move for

an order of protection.  The propriety of its resistence to providing
discovery materials now rests on its timely served objections.

He also stated on page 5 of his order:

> As evasive or incomplete response is treated as a failure to
> respond.  Rule 37(a)(3), Fed.R.Civ.P.  The Court finds Allstate's
> practice of objecting and then responding to be confusing and
> evasive.  It therefore deems both the original and the supplemental
> objections waived.
>
> * * *
>
> Failure to assert a privilege or provide a privilege log <u>within the
> time for responding to discovery</u> results in a waiver of the
> privilege.  (Emphasis added).

Experian, like Allstate, chose to serve extensive and obstructive objections to Plaintiff's

discovery on February 22, 2008, without timely requesting a protective order, and without timely

filing a privilege log.  On April 14, 2008 , Experian filed a motion for a protective order and

attached to that motion a proposed protective order and a memorandum in support.  This Court

has made it extraordinarily clear to practitioners and parties appearing before this Court that this

type of conduct will result in the unequivocal waiver of any right to seek a protective order.

Although Experian's counsel were specifically advised by Plaintiff's counsel about the

*Simonson* order and the fact that it had waived the right to obtain a protective order, Experian has

chosen to totally ignore the *Simonson* decision.  Experian has not so much as even mentioned the

*Simonson* decision in its memorandum, much less has it explained why it is entitled to special

treatment.  Experian is entitled to no such special treatment.  Experian is required to comply with

the law of this Court, which was clearly set forth in 2003.  Experian has clearly waived any right

to a protective order and this Court should so rule.

As the Court will note, in Plaintiffs' First Set of Requests for Production to Experian,

Plaintiff sought its entire file regarding Plaintiff and "all manuals, training guides, and other

documentation prepared by or for Defendant Experian which pertained in any way to handling

disputes and/or rectifying errors in credit reports.  In Response to Request for Production No. 6,

Experian stated:

> Subject to and without waiving its objections, Experian states that
> it will produce non-privileged, non-confidential documents

> responsive to this request in an appropriate time frame and scope to
> the extent that such documents exists [sic] and have not been
> produced previously, subject to the placement of a confidentiality
> agreement or protective order.

Again, this is, beyond question, insufficient.  If Experian was serious about its need for a

protective order, it was required by *Simonson, supra*, to move for a protective order before it

filed such obstructive objections to the discovery.  Experian simply is not entitled to any

protective order in this matter.

> ## 2. Experian Has Not Shown Good Cause That it Is Entitled to a Protective Order for Supposed Trade Secrets.

Experian seeks a protective order from the Court which would allow it to mark as

"confidential" any document it chooses, even though the supposed documentation is not, under

any stretch of the imagination, a trade secret.  Almost this precise issue has been decided by the

United States District Court, Northern District of Illinois, Eastern Division, in *Zahran v. Trans*

*Union Corp.*, 2002 WL 31010822 (N.D. Ill), another credit reporting agency, like Experian.  The

Illinois District Court has already made a determination that what Experian [Trans Union] seeks

to protect by a protective order is simply not a trade secret and that Experian has no "*carte*

*blanche*" authority to stamp as confidential anything it desires.

The Illinois court made it extraordinarily clear that the court system in the United States

is public and that the public has an interest in all judicial proceedings, subject to the special

circumstance where a defendant can show it is entitled to specific protection for a trade secret.  In

this regard, the Court stated:

> Pretrial discovery is often performed in private, although "the
> public at large pays for the courts and therefore has an interest in
> what goes on at all stages of a judicial proceeding." *Citizens First*
> *Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 944-
> 45 (7th Cir.1999). However, in order to protect the privacy interest
> of the parties throughout the proceedings, Federal Rule of Civil
> Procedure 26(c)(7) permits a court to grant a protective order "for
> good cause shown ... [in order that] a trade secret or other
> confidential research, development, or commercial information not
> be revealed or be revealed only in a designated way...." Fed. R.
> Civ. P. 26(c)(7)(2002) ("Rule 26(c)(7)").
> A court need not grant a protective order unless it is satisfied that
> the order is being sought for an actual trade secret or confidential
> business information and that there is good cause for the protective

> order. *See, Citizens,* 178 F.3d at 946; *Culinary Foods, Inc. v.*
> *Raychem Corp.,* 151 F.R.D. 297, 300 (N.D.Ill.1993) (citing
> *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d
> Cir.1986)). A showing of good cause prevents parties from having
> "carte blanche to decide what portions of the record shall be kept
> secret," and prohibits courts from "rubber stamp[ing] a stipulation
> to seal the record." *Citizens,* 178 F.3d at 945.

*Zahran, supra,* at 1-2.

Experian's efforts to mark every document as confidential as being a trade secret is highly

inappropriate and does not comply with Rule 26(c)(7), F.R.Civ.P.

The Illinois court specifically found that Trans Union's dispute training guides, dispute

procedures and subscriber agreements were in no way entitled to trade secret protection.  These

documents are, for the most part, the identical documents for which Experian is seeking a

protective order.

The Illinois court, in refusing to grant the protective order sought by Trans Union, stated

that the burden is very high on a company like Experian:

> . . . bald assertions of confidentiality, such as a statement by a
> movant that "disclosure could ... harm [the movant's] competitive
> position" is insufficient. *Id.* at 547 (internal quotation omitted).
> The court observed that documents containing both trade secrets
> and non-protectable information need only have certain portions of
> the documents redacted in order to maintain trade secrecy. *Citizens,*
> 178 F.3d at 945.

*Id.* at 2.

The court went on to refer to the Restatement of Torts definition of "trade secret" and

stated:

> Pursuant to Section 757 of the Restatement of Torts, "[a] trade
> secret may consist of any formula, pattern, device or compilation of
> information which is used in one's business, and which gives him
> an opportunity to obtain an advantage over competitors who do not
> know or use it." Restatement of Torts § 757 cmt. b (1939).

*Id.* at 2.

The Illinois court found that the documentation which Trans Union and Experian

attempted to call trade secrets were far from trade secrets and were entitled to no protection.

Because the ruling of this Court is so "on point" with what Experian is attempting to accomplish in this case, this factual finding by the Illinois court is extremely instructive:

> In all actuality, the portions of the Dispute Training Manual included in the Zahrans' exhibits, which outline procedures for consumer relations personnel to handle consumer credit disputes, are not rocket science. In the case at bar, the Court is not faced with the disclosure of the actual computer software used to design Trans Union's consumer credit database or the decision-making process that determines how or why certain information is placed on an individual's credit report in the first place. Here, the Court is only confronted with the data entry of consumer information, complaints, definitions and instructions on how to access consumer dispute history or similar screens. The Court concludes that the function commands, keystrokes, data entry instructions, and general computer codes in the Dispute Training Guide are not a "formula, pattern, device or compilation of information" that gives Trans Union an advantage over competitors. The Court does not see how a competitor will be advantaged if information relating to which keystrokes access which screens in the database is disclosed or if information about which departments handle various consumer inquiries becomes public knowledge.
>
> Finally, even if the Dispute Training Guide or Trans Union's other policies and procedures were trade secrets, Trans Union has not shown the Court good cause as to why a protective order is the appropriate remedy. As mentioned above, the Court does not find that Trans Union would be competitively disadvantaged if the information was accessed by competitors. The process which determines how or why certain information is inserted into an individual's credit report and becomes part of a credit report retains its secrecy and has not been disclosed.
>
> Trans Union's hypothetical hacker scenario does not convince the Court that Trans Union has good cause to protect its alleged trade secret. Once the hackers gain access, the integrity and security of Trans Union's system is already compromised. The Court declines to grant a protective order because of the remote *possibility* that someone *could* hack into the database and alter information, *possibly* using the information gleaned from the Dispute Training Guide. Certainly, someone sophisticated enough to hack into a computer network or server has the ability to wreak havoc with or without knowing that a particular keystroke or computer command accesses a person's credit dispute history. The hackers can accomplish this feat by simply pressing random keys on the keyboard. The argument that the Dispute Training Guide must be filed under seal, because hackers could use the information in the Training Guide and compromise the system is specious. As mentioned previously, the assignment of commands to certain keys is not a "formula" that the Court deems worthy of secrecy in litigation.

*Id.* at 3.

The Court went on to hold that the subscriber agreements of Trans Union are in no way trade secrets and are entitled to no confidentiality protection.  The Court's attention is also directed to *Ahern v. Trans Union*, 2002 WL 32114492 (D.Conn.), where the court ruled on this identical issue stating:

> In addition, blanket protective orders, without a showing of specific harm from disclosure, are rarely justified. *See e.g., Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) ("Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test.") In addition, bald assertions of confidentiality, such as a statement by a movant that disclosure could harm the movant's competitive position, are insufficient for a court to enter a protective order.
>
> In the present case, Transunion has not substantiated its assertion that the material it seeks to protect is either confidential or a trade secret. Nor has Transunion cited specific examples, or articulated reasoning, indicating it will suffer harm if the court does not enter a protective order in this case. Even assuming that the material contains confidential information, Transunion [sic] not demonstrated that it has met the good cause standard required by Rule 26(c)

*Id.* at 4.

Experian wishes to make this litigation extraordinarily difficult for the Plaintiff and the Court by having *carte blanche* authority to mark any desired document as confidential and, hence, fall within the ambit of a supposed protective order the right to which has been waived. Before Experian is entitled to even assert a document is a "trade secret" it should be required to prove, by sworn affidavit:

a.   Precisely what information is designated confidential;

b.   the specific reason the information is being designated confidential;

c.   the exact harm to the defendant if the information is not kept confidential'

d.   a sworn statement that the information is not available to anyone outside the defendant and has never been provided to any credit bureau or member of the Association of Credit Bureaus, Inc., the Federal Trace Commission, any state agencies, subscribers, auditors or separate companies;

e.      a sworn statement that each employee who has access to the information is compelled as a condition of employment to sign a document prohibiting disclosure of the information to be made confidential in this action;

f.      a sworn statement that the document sought to be made confidential has never been made part of a public record;

g.      a sworn statement that no former employee of the party seeking confidentiality has ever had access to the information and then gone to work for any other collection agency;

h.      a disclosure of the number of employees who have access to the information sought to be made confidential;

i.      a copy of the form nondisclosure agreement signed by each employee with access to the information; and

j.      if the information sought to be made confidential relates to software or a method, whether the software is still in use and a patent for the method or software has ever been applied for by anyone.

Experian's attempt to *carte blanche* claim all these documents are trade secrets is simply specious.

## 3.      Experian's Proposed Protective Order is Much Too Broad.

Even though Experian has unequivocally waived its right to a protective order, Plaintiff is willing to agree that the documentation produced by Experian in this case will not be disclosed to anyone not connected with this lawsuit and that such documents will be returned to Experian, along with all copies, at the conclusion of the case.  Plaintiff is willing to enter into such a stipulation with Experian, not because Experian has any right to request this Court to grant such a protective order, but merely because this will not prejudice the Plaintiff.  After Experian was advised that it had waived its right to a protective order, it leveled an ad hominem attack on Plaintiff's counsel, attempting to blame Plaintiff's counsel for refusing to agree that the obvious waiver did not occur.  Such diatribe and accusations are simply inappropriate and provide no solace to Experian.

Experian has been, for many years, intentionally violating the FCRA by not only failing to investigate disputed credit reports, but by not even having in place a method to investigate,

much less, any employees to investigate.  This case will be tried in a public courtroom before

Judge Cebull and the documents proving Experian's intentional violation of the FCRA will be

offered and presumably admitted into evidence as exhibits.  In addition, a number of witnesses

will testify specifically about this documentation to show Experian's willful violations of the

FCRA.  Also, all of this documentation, that is the testimony and the exhibits, will be forwarded

on to the Ninth Circuit Court of Appeals in the event of an appeal.  Experian's contention that all

of this testimony and all of these exhibits must, at all times, be filed under seal, simply belies the

manner in which the court system operates and the fact that the court system is open to the

public.  *Zahara, supra.*  It would be extremely burdensome on the Plaintiff if he could not

mention the exhibits or any testimony in any brief or motion or pleading.  It, likewise, would be

extremely cumbersome for this Court and for Judge Cebull at the time of trial if every exhibit and

all testimony must be filed under seal.

Obviously, Experian now appreciates the situation it is in because it will be exposed as a

credit reporting agency that intentionally violates and has intentionally violated for many years,

the FCRA.  Experian's willful violations of the FCRA are not privileged and Experian is not

entitled to a protective order preventing all such testimony and all such exhibits to be filed only

under seal.

In ¶ 8, this proposed protective order, provides that the order shall in no way "prevent a

party from using at trial any information or materials designated 'confidential.'"  Again, any

federal court trial is a public trial and any exhibits and trial testimony could not possibly be

entered into the record in the trial, under seal.  Since all of the exhibits and testimony will be

filed with the Court during trial, there simply is no rational reason to prohibit the filing of

exhibits or testimony with the Court, pretrial, whether through motions or pleadings.  Experian's

proposed protective order would simply become an extreme burden on all the parties and the

Court, to no end.

Experian's proposed protective order would preclude the Plaintiff's attorney from

consulting or sharing information with other attorneys who have handled FCRA cases.  At the

same time, Experian would remain free to consult with other credit reporting agencies and their attorneys to work on their defense.  Obviously, this would be a gross inequity.  Again, the real motive for secrecy sought by Experian is to shield practices and procedures which have already been declared to be illegal by Congress when Experian knows the disclosure of this conduct would lead to the filing of other FCRA claims by injured claimants who are ignorant of this conduct.

**D.     CONCLUSION.**

For the reasons set forth above, the Court should hold that Experian has waived the right to a protective order, pursuant to *Simonson v. Allstate,* but that Experian, through stipulation by Plaintiff, can have a protective order entered as agreed upon by Plaintiff.

DATED this 25rd day of April, 2008.

HOYT & BLEWETT PLLC


___/s/ Alexander (Zander) Blewett, III___
Alexander (Zander) Blewett, III
Attorneys for Plaintiff


**CERTIFICATE OF SERVICE**

I hereby certify that, on this 25rd day of April, 2008, a copy of the foregoing document was served on the following persons by the following means:

| 1, 2, 3, 4, 5, 6 | CM/ECF |
| --- | --- |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.     Clerk, U.S. District Court

2.     Shane P. Coleman, Esq.
Jason S. Ritchie, Esq.
HOLLARD & HART LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, MT   59103-0639
spcoleman@hollandhart.com
jritchie@hollandhart.com
Attorneys for Defendant Taylor Bean & Whitaker Mortgage Corp.

3.      T. Thomas Singer, Esq.
        AXILON LAW GROUP, PLLC
        115 North Broadway, Suite 310
        P.O. Box 987
        Billings, MT   59103-0987
        tsinger@axilonlaw.com
        Attorney for Defendant Experian Information Solutions, Inc.

4.      Tamar Tal, Esq.
        JONES DAY
        3 Park Plaza, Suite 1100
        Irvine, CA   92614
        tyudenfreund@jonesday.com
        Attorney for Defendant Experian Information Solutions, Inc.

5.      Alan L. Joscelyn, Esq.
        GOUGH, SHANAHAN, JOHNSON & WATERMAN
        33 S. Last Chance Gulch
        P.O. Box 1715
        Helena, MT   59624-1715
        alj@gsjw.com
        Attorney for Defendant Trans Union LLC

6.      Donald E. Bradley, Esq.
        MUSICK, PEELER & GARRETT LLP
        650 Town Center Drive, Suite 1200
        Costa Mesa, CA   92626
        d.bradley@mpglaw.com
        Attorney for Defendant Trans Union LLC

                                HOYT & BLEWETT PLLC


                                    /s/ Alexander (Zander) Blewett, III
                                Alexander (Zander) Blewett, III
                                Attorneys for Plaintiff