Alexander (Zander) Blewett, III
Anders Blewett
HOYT & BLEWETT PLLC
501 Second Avenue North
P.O. Box 2807
Great Falls, MT   59403-2807
Phone: (406) 761-1960
Fax: (406) 761-7186
E-mail:  zblewett@hoytandblewett.com
         ablewett@hoytandblewett.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

* * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| MARK LEISCHNER and TAMMY, LEISCHNER, Husband and Wife, Individually and as Parents for their Minor Children, Brendon Leischner, Paytyne Leischner, Larkin Leischner, Gaje Leischner and Layke Leischner,   )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No.:  CV-07-138-BLG-RFC-CSO<br><br>Judge: Hon. Carolyn S. Ostby |
| Plaintiffs,   )<br>) | **PLAINTIFFS' BRIEF IN OPPOSITION TO TRANSUNION LLC'S MOTION FOR A PROTECTIVE ORDER** |
| v.   )<br>) | |
| EQUIFAX INFORMATION SERVICES LLC, ) TAYLOR BEAN & WHITAKER MORTGAGE CORPORATION, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANSUNION LLC,   )<br>)<br>)<br>)<br>) | |
| Defendants.   ) | |

* * * * * * * * * * * * * * * * * * *

## A.    INTRODUCTION.

On May 22, 2008, TransUnion filed a Motion for a  Protective Order which seeks similar protection to that sought by Experian when it filed its Motion for a Protective Order on April 14, 2008.  Plaintiff has already responded to Experian's motion, pointing out several reasons it should not be entitled to a protective order.  Although these motions for a protective order are very similar, there are issues which require Plaintiff to file a separate response.

Factually, TransUnion, like Experian, continued to report that Plaintiff owed $174,858 on a real estate mortgage and that he was in arrears in an amount exceeding $34,595 and that these amounts were due after November 1, 2006.  All of this information was absolutely false.

Plaintiff dutifully disputed the information and TransUnion, like Experian, refused to perform any investigation, thereby making it impossible for Plaintiff to find anyplace to live for his wife and five children.

Plaintiff has now discovered that TransUnion, along with Experian, not only failed to comply with the FCRA, but had no intention of complying with that Act.  TransUnion has no employees to investigate such disputes and, like Experian, continues to report false information against consumers with no investigation, after a dispute has been made, assuming that the consumers will not bring TransUnion and Experian to task for their wrongdoing.

TransUnion, like Experian, has embarked on incredible discovery abuse by objecting to virtually every interrogatory, request for production, and request for admission.  Experian filed its Motion for a Protective Order <u>after</u> the time required to answer Plaintiffs' First Set of Interrogatories and Requests for Production, and before Experian's responses were due to the Second Set of Interrogatories and Requests for Production.  TransUnion, on the other hand, totally failed to file its Motion for a Protective Order within the time required to respond to the first and second sets of discovery.

Plaintiff has attached copies of TransUnion's responses to Plaintiffs' First Set of Interrogatories (Exhibit "A"), First Set of Requests for Production (Exhibit "B"), Second Set of Interrogatories (Exhibit "C"), and Second Set of Requests for Production (Exhibit "D").  As the Court will note, TransUnion, like Experian, used boiler plate objections.  TransUnion objected to every interrogatory on any basis it could imagine and provided virtually no information which was of any help whatsoever to Plaintiff.  TransUnion's objections, like Experian's, claimed attorney-client privilege, work product privilege, "every other judicially recognized protection or privilege," trade secret privilege, in addition to claiming the discovery was over broad, burdensome, harassing, vague and ambiguous.

Most of the interrogatories were not answered.  After objection to Plaintiffs' Interrogatory No. 4, where Plaintiff asked TransUnion to describe anyone who contacted TransUnion about disputing the accuracy of Plaintiff's credit reports <u>after</u> November 1, 2006.  TransUnion provided

some information, the vast majority of which <u>predated</u> November 1, 2006, and had nothing whatsoever to do with the interrogatory at issue.

Also, in response to Interrogatory No. 13 asking for the net worth of TransUnion, it refused to provide the information and set forth the objections of attorney-client privilege, attorney work product, over broad, burdensome, harassing, and that the net worth information was confidential and/or proprietary.

TransUnion asserted the same objections to Plaintiffs' First Set of Requests for Production. In response to Request for Production No. 6 regarding manuals and training guides that pertained to handing disputes and rectifying errors, TransUnion went through its litany of objections and stated: "TransUnion expects that it can negotiate an acceptable protective order, after which it will produce responsive documents." At no time until May 22, 2008, did TransUnion file a motion for such protective order. In response to Plaintiffs' Second Set of Interrogatories and Second Requests for Production, TransUnion, again, raised similar objections and refused to produce the requested documentation. The responses to the Second Set of Interrogatories and Second Requests for Production were served on Plaintiff on April 28, 2008, and May 12, 2008, and no protective order was sought until May 22, 2008.

TransUnion, like Experian, objected to each discovery response and then stated it would provide some information, making it impossible for Plaintiff to tell if TransUnion was providing all or just a portion of the information because of the objections.

TransUnion is not entitled to a protective order because, beyond question, it waived the right to obtain a protective order from this Court, pursuant to the *Simonsen* decision. This issue was discussed at length in Plaintiff's Response to Experian's Motion for a Protective Order. There simply is no question but that under the *Simonsen* order, issued by Magistrate Anderson and affirmed by Article 3 Judge Molloy, that TransUnion and Experian waived any supposed right to a protective order. In addition, TransUnion has totally failed to show "good cause" for a protective order for its training guides, dispute procedures, agreements in communications with its subscribers, subscriber agreements which appear to be uniform among the major credit reporting agencies, and automated consumer dispute verification procedures. TransUnion claims

that it is dreadfully fearful of the possibility of Experian and/or Equifax, its competitors, obtaining this information when all three of these credit reporting agencies have access to most if not all of this information, many cases are brought against all three major credit reporting agencies and each of the three CRA's have access to each other's information.

Finally, the protective order being sought by TransUnion is meant to totally disrupt the manner in which counsel and the Court ordinarily try a case and flies directly in the face of the "compelling reason" standard set forth in *Pintos v. Pacific Creditor's Association,* 504 F.3d 792, 801-803 , (C.A. 9, Cal. 2007).  In addition, a federal district judge in *Zahran v. TransUnion*, 2002 W.L. 31010822 (N.D. Ill), specifically ruled that the TransUnion documents, <u>after a factual inquiry</u>, were not trade secrets and that TransUnion was not entitled to any trade secret protection or protective order.  A final judgment was entered in the *Zahran* case on March 31, 2003, and the Court found that its memorandum and order on that date was "a final, appealable order"  (2003 W.L. 1733561).  TransUnion failed to appeal the rulings of the District Court concerning the trade secret and protective order issues.  As a result, the doctrine of collateral estoppel prohibits TransUnion from arguing this factual determination and final judgment again.

In addition, TransUnion has made no effort whatsoever to prove to this Court that it has never produced any of the documentation sought by Plaintiffs to any other party or filed any such documents in any Court <u>without</u> a protective order.  Clearly, that is a burden that falls upon TransUnion and Experian and neither have made any effort to comply with that burden.  Finally, *In re TransUnion Privacy Litigation* 2008, W.L. 850316, the Court specifically found that TransUnion had filed its financial information with the Court <u>and not under seal</u> and TransUnion is bound by that judicial finding.

**B.**   <u>**ARGUMENT**</u>

    **1.**   <u>**TransUnion, along with Experian, Has Waived Any Right to Obtain a Protective Order**</u>.

On pages 3 through 5 of Plaintiff's Objection to Experian's Motion for a Protective Order, Plaintiff has thoroughly discussed the *Simonsen* decision.  There simply is no question but that TransUnion failed to comply with Judge Anderson and Judge Molloy's decisions in

*Simonsen* and that any relief from a protective order has been waived by TransUnion.  It certainly does not matter that in *Simonsen*, Allstate waited longer than did TransUnion to seek a protective order.  TransUnion simply had no right to refuse discovery and state that it would seek a protective order later.  That is the import of *Simonsen*.  TransUnion did not have a right to thwart discovery in hopes that it could force yet another Plaintiff to enter into a stipulated protective order of its own choosing.  TransUnion's counsel states that he has represented TransUnion in hundreds of cases in eleven different states over 19 years and that the parties have <u>always</u> reached a stipulated protective order.  In the first place, TransUnion is hard pressed to make that assertion in light of the two decisions cited by Plaintiff in the Experian brief, *Zahran v. TransUnion*, 2002 W.L. 31010822 (N.D. Ill.) and *Ahern v. TransUnion,* 2002 W.L. 32114492 (D. Conn.), where the Court <u>refused</u> to grant protective orders.  It is certainly true that TransUnion attempts to use its wealth and power to force Plaintiff's counsel into signing protective orders, the vast percentage of them being highly obstructive to the entire litigation process.  However, the two Courts which have handled this issue in litigation have ruled directly against TransUnion

TransUnion's discovery abuse, like Experian's, is simply not countenanced by the Courts.
As the Ninth Circuit stated in *Davis v. Fendler*, 650 F.3d 1154, 1160 (9th Cir. 1981):

> Moreover, objections should be plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable. Appellant never identified, with any specificity, the interrogatories to which the claim of privilege pertained. Appellant's blanket claim of privilege is simply not sufficient.

In *Josephs v. Harris Corp*, 677 F.2d 985, 992 (C.A. Pa. 1982), the Court stated:

> Harris claims that the information sought was burdensome and oppressive.  However, the mere statement by a party that the interrogatory was "overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery "must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D.Pa.1980) (citations omitted).

Finally, in *Paniola Land Buyers v. Shuman*, 762 F.2d 1550, 1559-60 (CA 11th, 1985), the Court stated:

> Appellees' objections included in the motion for protective order
> do not fall within the Fed.R.Civ.P. 26(b) factors relevant to the
> court's exercise of its discretion to limit discovery. Appellees
> complain that Panola's requests for production of documents and
> interrogatories are unnecessary, too long, too broad, require too
> much time, are expensive to complete, are irrelevant, are
> improperly timed, and entail unreasonable geographic compliance.
> No mention of the Rule 26(b) factors is made in sufficient
> specificity to allow the magistrate and the district court, absent an
> abuse of discretion, to grant the motion for a protective order. The
> recitation of expense and burdensomeness are merely conclusory.

TransUnion chose to disrupt discovery and chose <u>not</u> to seek a protective order in a timely fashion as required by *Simonsen*.  TransUnion is not entitled to a protective order on any of the outstanding discovery.  Experian, clearly waived any supposed right to a protective order regarding the first set of Plaintiff's discovery, but filed its motion for a protective order before the answers were due on the second set.  Experian, like TransUnion, clearly waived any right to a protective order regarding the first discovery, but neither Experian nor TransUnion are entitled to a protective order in any event for the other reasons stated herein.

## 2.   <u>TransUnion Has Not Shown Good Cause That it Is Entitled to a Protective Order</u>.

TransUnion seeks a protective order from the Court which would allow it to mark as "confidential" <u>any</u> document it chooses, even though the supposed documentation is not a trade secret or in any other way protected.  This precise issue has been decided by the United States District Court, Northern District of Illinois, Eastern Division, in *Zahran v. TransUnion*, 2002 W.L. 31010822 (N.D. Ill).  The Illinois District Court decision was strong as asserted against Experian because the documentation has been judicially determined to not be a trade secret or protected in any other way.  This issue was discussed at length on pp. 5 through 9 of Plaintiff's Brief in Opposition to Experian's Motion for a Protective Order.  The *Zahran* decision has even more impact on the position taken by TransUnion.  The Court in *Zahran* made <u>a factual determination</u> and specifically found that the Dispute Training Manual is "not rocket science" and that it is <u>not a trade secret</u>.  The Court also found that the subscriber agreements of TransUnion would not be "competitively disadvantaged" if Experian or some other competitor

obtained this information.  Finally, the Court specifically found that TransUnion's "hypothetical

hacker" scenario is not good cause for a protective order.

The Illinois District Court has already made a determination that what TransUnion seeks

to protect by a protective order is simply not a trade secret and that TransUnion has no "*carte*

*blanche*" authority to stamp as confidential anything it desires.

The Illinois court made it extraordinarily clear that the court system in the United States

is public and that the public has an interest in all judicial proceedings, subject to the special

circumstance where a defendant can show it is entitled to specific protection for a trade secret.  In

this regard, the Court stated:

> Pretrial discovery is often performed in private, although "the
> public at large pays for the courts and therefore has an interest in
> what goes on at all stages of a judicial proceeding." *Citizens First
> Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 944-
> 45 (7th Cir.1999). However, in order to protect the privacy interest
> of the parties throughout the proceedings, Federal Rule of Civil
> Procedure 26(c)(7) permits a court to grant a protective order "for
> good cause shown ... [in order that] a trade secret or other
> confidential research, development, or commercial information not
> be revealed or be revealed only in a designated way...." Fed. R.
> Civ. P. 26(c)(7)(2002) ("Rule 26(c)(7)").
>
> A court need not grant a protective order unless it is satisfied that
> the order is being sought for an actual trade secret or confidential
> business information and that there is good cause for the protective
> order. *See, Citizens,* 178 F.3d at 946; *Culinary Foods, Inc. v.
> Raychem Corp.,* 151 F.R.D. 297, 300 (N.D.Ill.1993) (citing
> *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d
> Cir.1986)). A showing of good cause prevents parties from having
> "carte blanche to decide what portions of the record shall be kept
> secret," and prohibits courts from "rubber stamp[ing] a stipulation
> to seal the record." *Citizens,* 178 F.3d at 945.

*Zahran, supra,* at 1-2.

TransUnion's efforts to mark every document as confidential as being a trade secret is

highly inappropriate and does not comply with Rule 26(c)(7), F.R.Civ.P.

The Illinois court specifically found that TransUnion's dispute training guides, dispute

procedures and subscriber agreements were <u>in no way</u> entitled to trade secret protection.  These

documents are, for the most part, the identical documents for which TransUnion is seeking a

protective order.

The Illinois court, in refusing to grant the protective order sought by TransUnion, stated that the burden is very high on a company like TransUnion:

> . . . bald assertions of confidentiality, such as a statement by a movant that "disclosure could ... harm [the movant's] competitive position" is insufficient. *Id.* at 547 (internal quotation omitted). The court observed that documents containing both trade secrets and non-protectable information need only have certain portions of the documents redacted in order to maintain trade secrecy. *Citizens,* 178 F.3d at 945.

*Id.* at 2.

The court went on to refer to the Restatement of Torts definition of "trade secret" and stated:

> Pursuant to Section 757 of the Restatement of Torts, "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Restatement of Torts § 757 cmt. b (1939).

*Id.* at 2.

The Illinois court found that the documentation which TransUnion and Experian attempted to call trade secrets were far from trade secrets and were entitled to no protection. Because the ruling of this Court is so "on point" with what TransUnion is attempting to accomplish in this case, this factual finding by the Illinois court is extremely instructive:

> In all actuality, the portions of the Dispute Training Manual included in the Zahrans' exhibits, which outline procedures for consumer relations personnel to handle consumer credit disputes, are not rocket science. In the case at bar, the Court is not faced with the disclosure of the actual computer software used to design Trans Union's consumer credit database or the decision-making process that determines how or why certain information is placed on an individual's credit report in the first place. Here, the Court is only confronted with the data entry of consumer information, complaints, definitions and instructions on how to access consumer dispute history or similar screens. The Court concludes that the function commands, keystrokes, data entry instructions, and general computer codes in the Dispute Training Guide are not a "formula, pattern, device or compilation of information" that gives Trans Union an advantage over competitors. The Court does not see how a competitor will be advantaged if information relating to which keystrokes access which screens in the database is disclosed or if information about which departments handle various consumer inquiries becomes public knowledge.

> Finally, even if the Dispute Training Guide or Trans Union's other policies and procedures were trade secrets, Trans Union has not shown the Court good cause as to why a protective order is the appropriate remedy. As mentioned above, the Court does not find that Trans Union would be competitively disadvantaged if the information was accessed by competitors. The process which determines how or why certain information is inserted into an individual's credit report and becomes part of a credit report retains its secrecy and has not been disclosed.
>
> Trans Union's hypothetical hacker scenario does not convince the Court that Trans Union has good cause to protect its alleged trade secret. Once the hackers gain access, the integrity and security of Trans Union's system is already compromised. The Court declines to grant a protective order because of the remote *possibility* that someone *could* hack into the database and alter information, *possibly* using the information gleaned from the Dispute Training Guide. Certainly, someone sophisticated enough to hack into a computer network or server has the ability to wreak havoc with or without knowing that a particular keystroke or computer command accesses a person's credit dispute history. The hackers can accomplish this feat by simply pressing random keys on the keyboard. The argument that the Dispute Training Guide must be filed under seal, because hackers could use the information in the Training Guide and compromise the system is specious. As mentioned previously, the assignment of commands to certain keys is not a "formula" that the Court deems worthy of secrecy in litigation.

*Id.* at 3.

More importantly, regarding TransUnion, is the fact that a final judgment was entered in *Zahran* in 2003 W.L. 1733561 (N.D. Ill), where the Court specifically held "this case is hereby terminated.  This is a final, appealable order." (p. 10).  Under the circumstances, the doctrine of collateral estoppel bars TransUnion from relitigating this issue.  In *Kubacki v. Molchan*, 2007 MT 306, 340 Mont. 100, 172 P.3d 594, the Court discussed the doctrine of collateral estoppel saying:

> In Montana, **collateral estoppel** bars future litigation when the following four elements are satisfied:
>
> (1)    The identical issue raised was previously decided in a prior adjudication;
>
> (2)    A final judgment on the merits was issued in the prior adjudication;
>
> (3)    The party against whom **collateral estoppel** is now asserted was a party or in privity with a party to the prior adjudication; and

(4)     The party against whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred.

All four of these criteria are undeniably met in this situation.  TransUnion contended its documentation was a trade secret and the Court found they were not trade secrets.  A final judgment was entered in the case.  TransUnion did not appeal.  TransUnion was the party in the *Zahran* case and TransUnion was the party, against whom issue preclusion is now being asserted and TransUnion was clearly afforded "a full and fair opportunity to litigate" this issue.  TransUnion lost this issue once, a final judgment was entered, TransUnion failed to appeal and it is bound by the result.  TransUnion may argue that it won the case and had summary judgment entered in its favor against the pro se Plaintiffs, which is true.  However, TransUnion clearly had the right to appeal the ruling of the District Court in *Zahran*, chose not to appeal, and must suffer the consequences of that final judgment.

Another court ruled directly against TransUnion on these precise issues.  The Court's attention is directed to *Ahern v. Trans Union*, 2002 WL 32114492 (D.Conn.), where the court ruled on this identical issue stating:

In addition, blanket protective orders, without a showing of specific harm from disclosure, are rarely justified. *See e.g., Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) ("Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test.") In addition, bald assertions of confidentiality, such as a statement by a movant that disclosure could harm the movant's competitive position, are insufficient for a court to enter a protective order.

In the present case, Transunion has not substantiated its assertion that the material it seeks to protect is either confidential or a trade secret. Nor has Transunion cited specific examples, or articulated reasoning, indicating it will suffer harm if the court does not enter a protective order in this case. Even assuming that the material contains confidential information, Transunion [sic] not demonstrated that it has met the good cause standard required by Rule 26(c)

*Id.* at 4.

TransUnion, like Experian, wishes to make this litigation extraordinarily difficult for the Plaintiff and the Court by having *carte blanche* authority to mask any desired document as

confidential and, hence, fall within the ambit of a supposed protective order. TransUnion, like Experian, feels it has the right to demand a protective order for everything and that it can prevent Plaintiff from filing any dispositive motions which mention or attach any documentation from dispositive motions. If TransUnion or Experian were allowed to have such a protective order entered by the Court, this would create an enormous burden, cost and nuisance upon the Plaintiff and the Court. As the Second Circuit stated *In re Orion Pictures Corp.*, 21 F.3d 24, 26 (2nd Cir. 1994):

> Moreover, on a purely practical level, the sealing of court records inflicts a costly nuisance on the judicial system. *City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir. 1991) (Pratt, J., concurring). Mechanical and logistical problems of sealing the files, finding extra space in the vault, satisfying all the handling requirements, plus the related direct and indirect costs, impose substantial burdens on the clerk's office and on a judge's staff. All these factors argue strongly for open access to court records in the bankruptcy court. *Id.*

*Id.* at 26.

TransUnion and Experian are not asking for this protective order to protect any trade secrets, but, on the contrary, are requesting this protective order to thwart Plaintiff's abilities to prosecute this action and to further thwart the Court's abilities to handle the litigation. In asking for the protective order, TransUnion and Experian have totally confounded the two standards governing motions to seal documents. There is a huge difference between a standard of "good cause" for allowing protection of documents produced in discovery and the standard of "compelling reasons" which pertains to any documents filed with the Court. In the very recent Ninth Circuit decision, *Pintos v. Pacific Creditor's Association*, 504 F.3d 792, 801-803 (C.A. 9, Cal. 2007), the Court stated:

> Two standards generally govern motions to seal documents like the one at issue here. First, a "compelling reasons" standard applies to most judicial records. *See Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir.2006) (holding that "[a] party seeking to seal a judicial record ... bears the burden of overcoming ... the 'compelling reasons' standard"); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir.2003). This standard derives from the common law right "to inspect and copy public records and documents, including judicial records and documents." *Kamakana*, 447 F.3d at 1178 (citation and internal quotation marks omitted). To limit this common law right of

> access, a party seeking to seal judicial records must show that
> "compelling reasons supported by specific factual findings ...
> outweigh the general history of access and the public policies
> favoring disclosure." *Id.* (internal quotation marks and citations
> omitted).

*Id.* at 801.  It is TransUnion and Experian's position in this case that all documents they mark

confidential must be filed under seal during the dispositive motion stage and/or at trial.  This

relief being sought by TransUnion and Experian most certainly requires the "compelling reasons"

standard set by the Ninth Circuit.  In this case, Plaintiff certainly plans on filing a dispositive

motion for summary judgment against TransUnion and Experian and will attach to that motion

all of the documentation finally produced by TransUnion and Experian which prove the contents

of their Dispute Training Manual, their subscriber agreements, and all the other documentation

which will, unequivocally, prove that TransUnion and Experian never had any procedure in place

where it could or would perform an investigation such as was required by the FCRA.

     In *Pintos*, the Court stated:

> Experian wishes to seal documents attached to Pintos's cross-
> motion for summary judgment. Rule 26(c) does not govern these
> documents because they are not "private materials unearthed
> during discovery" but have become part of the judicial record.
> *Kamakana,* 447 F.3d at 1180. Additionally, the documents do not
> fall within the *Phillips* exception to the general presumption of
> access because Pintos's motion was dispositive.  *See Foltz,* 331
> F.3d at 1135 (holding that the *Phillips* exception is "expressly
> limited to the status of materials ... attached to a non-dispositive
> motion" (emphasis omitted)). Consequently, Experian must
> overcome a strong presumption of access by showing that
> "compelling reasons supported by specific factual findings ...
> outweigh the general history of access and the public policies
> favoring disclosure." *Kamakana,* 447 F.3d at 1179-80 (internal
> quotation marks and citations omitted).

*Id.* at 802.

     TransUnion and Experian wish to infringe on the fact that documents filed in the Court

are public, open to review by everyone and are no longer private.  As the Court stated in *Pintos*:

> Under the "compelling reasons" standard, a district court must
> weigh "relevant factors," base its decision "on a compelling
> reason," and "articulate the factual basis for its ruling ... without
> relying on hypothesis or conjecture." *Hagestad v. Tragesser,* 49
> F.3d 1430, 1434 (9th Cir.1995). A proper analysis is reviewed for
> abuse of discretion. *Foltz,* 331 F.3d at 1135. An order that fails to
> articulate its reasoning must be vacated and remanded because

"[m]eaningful appellate review is impossible" when the appellate panel has no way of knowing "whether relevant factors were considered and given appropriate weight." *Hagestad,* 49 F.3d at 1434-35 (internal quotation marks omitted).

Relevant factors" include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad,* 49 F.3d at 1434 (quoting *EEOC v. Erection Co., Inc.,* 900 F.2d 168, 170 (9th Cir.1990)).

*Id.* at 802.

What TransUnion and Experian are seeking in this case is absolutely prohibited by the Ninth Circuit decision in *Pintos, supra.* The Court's attention is also directed to *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (C.A. 9, Ore. 1995); *Foltz v. State Farm,* 331 F.3d 1122, 1135 (9th Cir., Ore. 2003); and, *Kamakana v. Honolulu,* 447 F.3d 1172 (9th Cir, Hawaii 2003).

TransUnion and Experian, ignoring the "compelling reasons" standard, have both attempted to meet the "good cause" standard of Rule 26(c), but have both totally failed to meet that standard. That standard would include at least all of the following:

a.   Precisely what information is designated confidential;

b.   the specific reason the information is being designated confidential;

c.   the exact harm to the defendant if the information is not kept confidential'

d.   a sworn statement that the information is not available to anyone outside the defendant and has never been provided to any credit bureau or member of the Association of Credit Bureaus, Inc., the Federal Trace Commission, any state agencies, subscribers, auditors or separate companies;

e.   a sworn statement that each employee who has access to the information is compelled as a condition of employment to sign a document prohibiting disclosure of the information to be made confidential in this action;

f.   a sworn statement that the document sought to be made confidential has never been made part of a public record;

g.   a sworn statement that no former employee of the party seeking confidentiality has ever had access to the information and then gone to work for any other collection agency;

     h.     a disclosure of the number of employees who have access to the information sought to be made confidential;

     i.     a copy of the form nondisclosure agreement signed by each employee with access to the information; and

     j.     if the information sought to be made confidential relates to software or a method, whether the software is still in use and a patent for the method or software has ever been applied for by anyone.

The good cause standard is not the appropriate standard giving the relief being sought by TransUnion and Experian.  The correct standard is "compelling reasons" why TransUnion's and Experian's documentation, which is filed with this public Court, should somehow be held from public view.  The *Pintos* decision requires the District Court to "articulate the factual basis for its ruling . . . without relying on hypothesis or conjecture" to find a "compelling reason" to prevent these public documents from being viewed by the public.  Neither TransUnion nor Experian has made any such effort to meet this standard.

Even though Experian had unequivocally waived its right to a protective order, Plaintiff was, at one time, willing to agree that the documentation produced by Experian in this case would not be disclosed to anyone not connected with this lawsuit and that such documents would be returned to Experian along with all the copies at the conclusion of the case.  This proposal simply is not possible under the authority of *Pintos, Hagestad, Foltz,* and *Kamakana*, *supra*.  Such a procedure was not acceptable to Experian and such a procedure was not acceptable to TransUnion.  Once this documentation is filed with the Court through motions for summary judgment, or at the time of trial, this documentation becomes public.  Therefore, Plaintiff is no longer in a position to agree to any protective order for the documentation to be produced by TransUnion and/or Experian, except, the financial information that will be produced, assuming that financial information is not filed with the Court.

TransUnion for many years has been intentionally violating the FCRA by not only failing to investigate disputed credit reports, by not having any employees to investigate and by not having any method in place to investigate.  This case will be tried in a public courtroom before Judge Cebull and the documents proving TransUnion's intentional violation of the FCRA will be

offered and presumably admitted into evidence as exhibits.  In addition, a number of witnesses will testify specifically about this documentation to show TransUnion's willful violations of the FCRA.  All of this documentation, that is, the testimony and the exhibits, will be forwarded onto the Ninth Circuit Court of Appeals in the event of an appeal.  TransUnion's contention that all of this testimony and all of these exhibits must at all times be filed under seal is absolutely violative of the mandate from the Ninth Circuit.  It would be extremely burdensome on the Plaintiff if he cannot mention the exhibits or any testimony in any brief or motion or pleading, as it would, likewise, be extremely cumbersome on Judge Cebull and his court staff.

TransUnion certainly appreciates the situation it is now in because it will be exposed as a credit reporting agency that intentionally violates, and has intentionally violated for many years, the FCRA.  TransUnion's willful violations of the FCRA are not privileged and TransUnion is not entitled to any protective order.  In addition, TransUnion's proposed protective order would preclude Plaintiff's attorney from consulting or sharing information with other attorneys who have handled FCRA cases, at the same time allowing TransUnion to consult with other credit reporting agencies and their attorneys to work on their defense.

TransUnion and Experian attempt to tread very heavily on the public federal court of Montana.  As the Ninth Circuit stated in *Hagestad v. Tragesser*, 49 F.3dc 1430, 1434 (C.A. 9, Ore. 1995):

> The Supreme Court acknowledged the existence of a common law right of access to records in civil proceedings: "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. at 597, 98 S.Ct. at 1312, 55 L.Ed.2d 570 (footnotes omitted). At the same time, the Court recognized that this right to inspect and copy judicial records is not absolute. *Id.* at 598, 98 S.Ct. at 1312. The Court did not endeavor to identify all of the factors to be weighed in determining whether access is appropriate, stating only that courts should consider "the interests advanced by the parties in light of the public interest and the duty of the courts." *Id.* at 602, 98 S.Ct. at 1314. The Court also acknowledged that the decision is "one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599, 98 S.Ct. at 1312-13.
>
> The Ninth Circuit has adopted the Seventh Circuit's approach for determining whether the common law right of access should be

> overridden, requiring courts to start with a strong presumption in favor of access. *See Valley Broadcasting Co.,* 798 F.2d 1289. This presumption of access may be overcome only "on the basis of articulable facts known to the court, not on the basis of unsupported hypothesis or conjecture." *Id.* at 1293 (quoting *United States v. Edwards,* 672 F.2d 1289, 1294 (7th Cir.1982)).
>
> * * *
>
> The factors relevant to a determination of whether the <u>strong presumption of access</u> is overcome include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *EEOC v. Erection Co., Inc.,* 900 F.2d 168, 170 (9th Cir.1990) ( *citing Valley Broadcasting,* 798 F.2d at 1294). After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture. *Valley Broadcasting,* 798 F.2d at 1295.

*Id.* at 1434. Neither TransUnion nor Experian has made any effort to meet this standard and to override the "strong presumption in favor of access." Id. TransUnion and Experian have simply failed to provide this Court with any "basis of articular facts" to allow the overcoming of this presumption.

TransUnion has developed a major credit reporting agency business which has been intentionally designed to violate the FCRA. It is no wonder TransUnion and Experian, its companion in the industry, want to force the filing of all exhibits and testimony under seal to prevent the world from realizing its indiscretions and unlawful conduct. TransUnion demands that it has "compelling reasons" to override the strong presumption that public records are available to be viewed by the public. TransUnion has failed in that effort and is entitled to no protective order.

## C.   CONCLUSION.

As a matter of public policy in consumer protection actions, the Plaintiff is proceeding as a "private attorney general", acting on behalf of all persons. *Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007). What Plaintiff learns about the wrongful and illegal conduct of TransUnion simply should not be allowed to be hidden "under the rug" by TransUnion so that the next consumer who is damaged by TransUnion's refusal to investigate a dispute is not damaged

in the same manner as Plaintiff was so damaged in this case.  TransUnion's Motion for a

Protective Order should be denied.

DATED this 29th day of May, 2008.

HOYT & BLEWETT PLLC


        /s/ Alexander (Zander) Blewett, III
Alexander (Zander) Blewett, III
Alexander (Anders) Blewett, IV
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of May, 2008, a copy of the foregoing document was

served on the following persons by the following means:

| 1, 2, 3, 4, 5, 6 | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1.      Clerk, U.S. District Court

2.      Shane P. Coleman, Esq.
        Jason S. Ritchie, Esq.
        HOLLARD & HART LLP
        401 North 31st Street, Suite 1500
        P.O. Box 639
        Billings, MT   59103-0639
        spcoleman@hollandhart.com
        jritchie@hollandhart.com
        Attorneys for Defendant Taylor Bean & Whitaker Mortgage Corp.

3.      T. Thomas Singer, Esq.
        AXILON LAW GROUP, PLLC
        115 North Broadway, Suite 310
        P.O. Box 987
        Billings, MT   59103-0987
        tsinger@axilonlaw.com
        Attorney for Defendant Experian Information Solutions, Inc.

4.      Tamar Tal, Esq.
        JONES DAY
        3 Park Plaza, Suite 1100
        Irvine, CA   92614
        tyudenfreund@jonesday.com
        Attorney for Defendant Experian Information Solutions, Inc.

5.	Alan L. Joscelyn, Esq.
	GOUGH, SHANAHAN, JOHNSON & WATERMAN
	33 S. Last Chance Gulch
	P.O. Box 1715
	Helena, MT   59624-1715
	alj@gsjw.com
	Attorney for Defendant Trans Union LLC

6.	Donald E. Bradley, Esq.
	MUSICK, PEELER & GARRETT LLP
	650 Town Center Drive, Suite 1200
	Costa Mesa, CA   92626
	d.bradley@mpglaw.com
	Attorney for Defendant Trans Union LLC

                              HOYT & BLEWETT PLLC


                              ___/s/ Alexander (Zander) Blewett, III___
                              Alexander (Zander) Blewett, III
                              Alexander (Anders) Blewett, IV
                              Attorneys for Plaintiff